JUDGE COTE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK          **13 CIV 5535**
-------------------------------------------------------------- x

ANDY SOTO AKA ARNALDO SOTO,

                                      Plaintiff,          **COMPLAINT**

           -against-

THE CITY OF NEW YORK, DETECTIVE SAED
RABAH, shield # 7604, DETECTIVE ANDRES          Jury Trial Demanded
MAHECHA, shield # 5565, RETIRED SERGEANT
COREY DAILEY, tax # 913758, AND POLICE
OFFICERS JOHN DOES 1-5,

                                    Defendants.

-------------------------------------------------------------- x

## PRELIMINARY STATEMENT

1. Plaintiff brings this civil rights action against the City of New York and several New York City Police Officers of Narcotics Borough Manhattan South alleging that, on September 17, 2010, defendants violated his rights under 42 U.S.C. § 1983, the Fourth and Sixth Amendments to the United States Constitution and New York state law by falsely arresting him, using unreasonable force on him, illegally strip searching him, denying him a fair trial and maliciously prosecuting him. The false criminal charges were dismissed on November 8, 2012. Plaintiff seeks compensatory and punitive damages, attorney's fees and costs and such other and further relief as the court deems just and proper.

Plaintiff also makes claims against the City of New York and New York City Police Officers of Narcotics Borough Manhattan South alleging that, on September 28, 2010, defendants again violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution by falsely arresting him and using unreasonable force on him

during the arrest. Plaintiff was incarcerated for two days before the District Attorney's office reviewed the case and declined to prosecute plaintiff. Plaintiff was released from Manhattan Central Booking on September 30, 2010. Plaintiff seeks compensatory and punitive damages, attorney's fees and costs and such other and further relief as the court deems just and proper.

## JURISDICTION & VENUE

2. This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth and Sixth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

3. Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide his New York state law claims of malicious prosecution and vicarious liability which form part of the same case and controversy as his federal claims under Article III of the United States Constitution.

4. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because the City of New York is located in this District and because the incident in question occurred in this District.

## JURY TRIAL

5. Pursuant to Fed. R. Civ. P. 38, plaintiff demands a jury trial.

## NOTICE OF CLAIM

6. With respect to plaintiff's state law claims of malicious prosecution and vicarious liability, a notice of claim was duly filed with the City within 90 days of the dismissal of the criminal charges, more than 30 days have elapsed since such filing and the City has not offered to settle plaintiff's state law claims.

2

## PARTIES

7. Plaintiff is a United States citizen.

8. The City of New York is a municipal corporation organized under the laws of the State of New York.

9. The individual defendants are members of the New York City Police Department ("NYPD"). Defendants were acting under color of state law and in their capacities as members of the NYPD at all relevant times. Defendants are liable for directly participating in the unlawful acts described herein and for failing to intervene to protect plaintiff from unconstitutional conduct. The defendants are sued in their individual capacities.

## STATEMENT OF FACTS

10. On September 17, 2010, at approximately 4:30 p.m., plaintiff was carrying his granddaughter and walking with his wife from his home located at 72 Baruch Drive in Manhattan, New York toward a bus stop located on Columbus Street when NYPD officers stopped him and ordered him to put his granddaughter down.

11. The officers threw plaintiff against a wall and handcuffed plaintiff excessively tight causing pain to plaintiff's wrists.

12. When plaintiff complained about the pain to his wrists, the officers told him not to act like a cry baby.

13. The officers arrested plaintiff although he had done nothing wrong.

14. Later, plaintiff learned that the defendants claimed that plaintiff had sold drugs earlier on September 17, 2010 inside a Key Food supermarket located at 43 Columbia Street in Manhattan.

15. Prior to his arrest, at approximately 4:00 p.m., plaintiff was at the Key Food supermarket to purchase milk.

3

16. Video images of the plaintiff recorded at the relevant date and times show that plaintiff had not committed any crime and did not act in a suspicious manner at the Key Food supermarket.

17. Plaintiff had obeyed the law at all relevant times.

18. After arresting plaintiff, the defendants placed him in a police van and took him to an unknown police precinct.

19. While plaintiff was held in the precinct, Detective Rabah, with the knowledge and approval of the other defendants, falsely charged plaintiff with Criminal Sale of a Controlled Substance in the Third Degree.

20. At the precinct, the defendants, acting in concert, illegally strip searched plaintiff by requiring plaintiff to strip nude, squat, spread his buttocks and cough.

21. The strip search of plaintiff was illegal because there was no reasonable suspicion to believe that plaintiff was hiding illegal items under his clothes, because plaintiff was not being placed in a general jail population at the time of the search, and because the strip search was not conducted privately.

22. Nothing illegal was recovered from plaintiff at the precinct.

23. Plaintiff was eventually taken to Manhattan Central Booking.

24. While plaintiff was held in Manhattan Central Booking, Detective Rabah, with the knowledge and approval of the other defendants, maliciously initiated a prosecution against plaintiff by misrepresenting to prosecutors that plaintiff had engaged in the criminal sale of a controlled substance and by signing a criminal court complaint containing the false allegations.

4

25. Plaintiff was incarcerated for approximately three days until his family posted bail.

26. For several days following plaintiff's release, the defendants followed plaintiff throughout the neighborhood where plaintiff lived.

27. On September 28, 2010, at approximately 6:00 p.m. officers in plainclothes stopped and seized plaintiff while he was walking in the vicinity of Columbia Street between Delancey and Rivington Streets in Manhattan, New York.

28. Plaintiff was engaged in lawful activity at all relevant times.

29. Defendant Dailey, who was one of the officers involved in plaintiff's arrest on September 17, 2010, exited an unmarked police car, ran toward plaintiff, cursed at plaintiff, seized plaintiff, threw him against a police car, and banged plaintiff's head against the car.

30. Defendants handcuffed plaintiff excessively tight causing pain to plaintiff's previously injured wrists.

31. After arresting plaintiff, the defendants placed him in a police vehicle and took him to a police precinct.

32. While plaintiff was held in the precinct, defendants told plaintiff he would be charged with criminal sale of a controlled substance.

33. Defendant Mahecha told plaintiff the new charges could be dismissed if plaintiff admitted to selling drugs in the Key Food supermarket on September 17, 2010.

34. While plaintiff was held at the precinct, the defendants, acting in concert, illegally strip searched plaintiff in front of other officers by requiring plaintiff to strip nude, squat, spread his buttocks and cough.

35. This strip search of plaintiff was illegal because there was no reasonable suspicion to believe that plaintiff was hiding illegal items under his clothes, because plaintiff was not being placed in a general jail population at the time of the search, and because the strip search was not conducted privately.

36. Nothing illegal was recovered from plaintiff.

37. While plaintiff was held in Manhattan Central Booking, the District Attorney reviewed the charges made against plaintiff and declined to prosecute plaintiff.

38. Plaintiff was incarcerated for two days. He was released from Manhattan Central Booking on September 30, 2010.

39. With respect to the September 17, 2010 arrest, plaintiff appeared in court numerous times until the false criminal charges were dismissed on November 8, 2012.

40. Plaintiff suffered damage as a result of defendants' actions on September 17, 2010 and September 28, 2010. Plaintiff was incarcerated and suffered a loss of liberty, pain, emotional distress, fear, anxiety, embarrassment and humiliation. Plaintiff did not receive medical or mental health treatment as a result of defendants' conduct.

## FIRST CLAIM

### (FALSE ARREST)

41. Plaintiff repeats the foregoing allegations.

42. Plaintiff did not commit a crime or violation at any time.

43. Despite plaintiff's innocence, the defendants arrested plaintiff or failed to intervene to prevent his false arrest on September 17, 2010 and September 28, 2010.

44. Accordingly, the defendants are liable to plaintiff under the Fourth Amendment for falsely arresting him on September 17, 2010 and September 28, 2010.

6

## SECOND CLAIM

### (UNREASONABLE FORCE)

45. Plaintiff repeats the foregoing allegations.

46. Defendants' physical force upon plaintiff or failure to intervene to prevent such force was objectively unreasonable and caused plaintiff pain and injury.

47. Accordingly, defendants are liable to plaintiff under the Fourth Amendment for using unreasonable force on him on September 17, 2010 and September 28, 2010.

## THIRD CLAIM

### (ILLEGAL STRIP SEARCHES)

48. Plaintiff repeats the foregoing allegations.

49. Defendants' two strip searches of plaintiff in the precinct were illegal because there was no reasonable suspicion to believe that plaintiff was hiding illegal items under his clothes, because plaintiff was not being placed in a general jail population at the time of the search, and because the strip searches were not conducted privately.

50. Accordingly, the defendants are liable to plaintiff under the Fourth Amendment for illegally strip searching him on September 17, 2010 and on September 28, 2010.

## FOURTH CLAIM

### (DENIAL OF A FAIR TRIAL)

51. Plaintiff repeats the foregoing allegations.

52. Defendants' misrepresentations about plaintiff to prosecutors deprived plaintiff of liberty because plaintiff was incarcerated and required to appear in court after the misrepresentations were made.

53. Accordingly, defendants are liable to plaintiff under the Sixth Amendment for denying him a fair trial related to plaintiff's arrest on September 17, 2010.

## FIFTH CLAIM

### (MALICIOUS PROSECUTION)

54. Plaintiff repeats the foregoing allegations.

55. Defendants maliciously misrepresented to prosecutors that plaintiff had committed a crime on September 17, 2010, and initiated a prosecution against him or played a role in initiating a prosecution against him.

56. Defendants' misrepresentations deprived plaintiff of liberty because he was incarcerated and required to appear in court after his arraignment.

57. The criminal case filed against plaintiff was ultimately dismissed.

58. Accordingly, the defendants are liable to plaintiff under the Fourth Amendment for malicious prosecution.

## SIXTH CLAIM

### (FAILURE TO INTERVENE)

59. Plaintiff repeats the foregoing allegations.

60. Defendants had a reasonable opportunity to prevent the violations of plaintiff's constitutional rights, but they failed to intervene.

61. Accordingly, the defendants are liable to plaintiff for failing to intervene to prevent the violation of plaintiff's constitutional rights on September 17, 2010 and on September 28, 2010.

## SEVENTH CLAIM

### (*MONELL* CLAIM AGAINST THE CITY OF NEW YORK)

62. Plaintiff repeats the foregoing allegations.

8

63. The City of New York is a "person" within the meaning of 42 U.S.C. § 1983.

64. The City of New York, through a policy, practice or custom, directly caused the constitutional violations suffered by plaintiff.

65. Upon information and belief, the City of New York, at all relevant times, was aware that the defendants and other members of the NYPD are unfit officers who have previously committed acts similar to those alleged herein, have a propensity for unconstitutional conduct and/or have been inadequately trained.

66. Specifically, Defendant Rabah has been sued for civil rights violations in three separate actions known to plaintiff over the last few years. In each action Defendant Rabah is accused of participating in the false arrest of the plaintiff and fabricating false charges against the plaintiff. *See Fermin v. Rabah,* 13 CV 0299 (LGS) (plaintiff alleges he was falsely arrested on drug related charges; all criminal charges were dismissed against plaintiff); *Williams v. The City of New York, et al.,* 11 CV 02619 (JGK) (plaintiff alleged he was falsely arrested, unlawfully strip searched and maliciously prosecuted; all criminal charges were dismissed against plaintiff); and *Hogarth v. The City of New York, et al.,* 06 CV 14315 (JSR) (plaintiff alleged false arrest, use of excessive force, fabricated evidence and malicious prosecution; all criminal charges were dismissed against plaintiff; the City of New York settled plaintiff's claims for $30,000.00)

67. The City of New York was also aware that Defendant Mahecha has a propensity for engaging in unconstitutional conduct based upon prior lawsuits. *See Thomas v. The City of New York, et al.,* 11 CV 0056 (AKH) (Mahecha subjected plaintiff to false arrest, excessive force, an illegal strip search, malicious prosecution and fabricated evidence; all

9

criminal charges against plaintiff were dismissed; the City of New York settled plaintiff's claims for $10,000.00).

68. The City of New York was also aware that defendant Dailey had previously committed acts similar to those alleged herein in numerous other cases. *See Cheek v. The City of New York, et al.*, 02 CV 01170 (RLE); *Hald v. The City of New York et al.*, 08 CV 07896 (WHP); *Rosario, et al. v. The City of New York et al.*, 10 CV 01277 (DLC); *Gonzalez, et al. v. The City of New York, et al.*, 10 CV 09039 (PKC); and *Socorro v. The City of New York, et al.*, 08 CV 06134 (LBS).

69. In October 2011, former Brooklyn South narcotics officer Jason Arbeeny was convicted in New York Supreme Court, Kings County, of planting drugs on two individuals and falsifying arrest reports. Before issuing a verdict of guilty, the judge scolded the NYPD for what he described as a "widespread culture of corruption endemic in its drug units." The judge further stated that the testimony demonstrated that the NYPD narcotics divisions maintain a "cowboy culture" and that he was "shocked, not only by the seeming pervasive scope of misconduct but even more distressingly by the seeming casualness by which such conduct is employed."

70. At least one federal court has recognized that there is widespread falsification by members of the NYPD. In *Colon v. City of New York*, Nos. 09 CV 8, 09 CV 9 (JBW), 2009 WL 4263362 (E.D.N.Y. November 25, 2009), the court stated that an "[in]formal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department."

71. Another federal court held in *Floyd v. City of New York*, 08 Civ. 1034 (S.D.N.Y. May 16, 2012) that the City of New York's and the NYPD's "cavalier attitude towards the prospect of a 'widespread practice of suspicionless stops' displays a deeply troubling apathy towards New Yorkers' most fundamental constitutional rights."

72. Despite the above, the City exercised deliberate indifference by failing to take remedial action. The City failed to properly train, retrain, supervise, discipline and monitor the defendants and other officers like them.

73. The City's failure to act resulted in the violation of plaintiff's constitutional rights as described herein.

## EIGHTH CLAIM

## (MALICIOUS PROSECUTION UNDER STATE LAW)

74. Plaintiff repeats the foregoing allegations.

75. Defendants maliciously misrepresented to prosecutors that plaintiff had committed a crime on September 17, 2010 and initiated a prosecution against him or played a role in initiating a prosecution against him.

76. The criminal case filed against plaintiff was ultimately dismissed.

77. Accordingly, the defendants are liable to plaintiff under New York state law for malicious prosecution.

## NINTH CLAIM

## (VICARIOUS LIABILITY CLAIM AGAINST CITY OF NEW YORK)

78. Plaintiff repeats the foregoing allegations.

79. The individual defendants were acting within the scope of their employment as members of the NYPD when they maliciously prosecuted plaintiff.

80. Accordingly, the City of New York is vicariously liable to plaintiff under New York state law for malicious prosecution based upon the September 17, 2010 arrest of plaintiff.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

    a. Compensatory damages in an amount to be determined by a jury;

    b. Punitive damages in an amount to be determined by a jury;

    c. Attorney's fees and costs;

    d. Such other and further relief as the Court may deem just and proper.

DATED:     August 7, 2013

*[signature]*

IZABEL OLSZOWA GARCIA
Attorney at Law
26 Court Street, Suite 1815
Brooklyn, New York 11242
(718) 624-4734

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

ANDY SOTO AKA ARNALDO SOTO,

                                               Plaintiff,

        -against-

THE CITY OF NEW YORK, et al.,

                                               Defendants.

------------------------------------------------------------------ x

## COMPLAINT

                                               THE LAW OFFICE of
                                               IZABEL OLSZOWA GARCIA
                                               26 Court Street, Suite 1815
                                               Brooklyn, New York 11242
                                               (718) 624-9391
                                               (646) 239-4330